when you're ready please the court my name is Dawes Cook from Charleston South Carolina representing the defendant appellants in this case with the court's permission we've broken our argument up and I'm gonna handle the jurisdictional issue as well as the issues common to all the parties and then Mr. Gresset is going to follow with issues specific to Blue Eagle and other entities related to Brad Johnson and then Necky Shutt is going to address the issue specific to Christina Dent and the what we call the Dent related entities. We contend your honor that this court has jurisdiction to hear this appeal both under the collateral order doctrine of Cohen versus beneficial industries and as an injunction. We've cited in our brief that this court's decision in Buckeye Union Insurance versus Wilmoth Carpenter's pension fund of Baltimore Buckeye specifically said a quote an order requiring or refusing to require the posting of security during the pendency of litigation is collateral and is appealable under the doctrine of Cohen. We would distinguish the that the government relies on primarily on two bases. One is that this order is collateral even though the court is called upon to evaluate the probable validity of the government's claim. What you rule here has no bearing whatsoever on the merits of the case. In other words, you could rule with us and we could still lose at trial and you could rule against us and we could win at trial and vice versa. It has no bearing, it's not binding at all. So for that reason we believe... It's not binding but it's certainly intertwined. It has to be an intertwined inquiry. It goes to the probable validity or legitimacy of the claim. It does and I can't deny that the issues are parallel. No, the issues are intertwined. Well... They rely on essentially even the same facts and arguments. That's true but if you look at the Carpenter's Pension Fund case there... Just stay with me on the facts. You've conceded, well, you just said, it relies on the same arguments and the same facts. True. Or similar facts. It relies on the same arguments and the same facts. Well, we haven't... The underlying facts. We haven't developed the facts of the underlying case yet. And the allegations. It does involve a preliminary evaluation of those. Which is where we are with respect to both. Well, that's true. But I think that that's common in many of the collateral order cases. That there are very few where the issue that the court's being asked to look at preliminarily has absolutely nothing to do with the underlying merits. And that's why I mentioned the Carpenter's case where the issue was sovereign immunity. Well, that was the whole issue in the underlying case and it was issue on appeal. If I could move to the injunctive relief under 28 U.S.C. 1292 A.1. But since it has... The issue has to be completely separate from the merits. And I'm going back to Cohen. I don't see how you satisfy... You conceded that it's not completely separate. I... I... I... Not to mince words, but we believe it's completely separate because it has no effect on the outcome of the case. But that's... But that's to look at it at the end. That would be true of any... Almost any preliminary hearing. The issue is a substantive issue. And you've said the evidence... The allegations that are... The discussion... The substantive discussion is the same. And the arguments line up. I understand. And that's simply because an important threshold issue is an examination of whether there's a... Regardless of why it's true, Cohen says that that's one of the mandatory factors that have to be satisfied. But the courts have interpreted collateral in different ways. And that's why I submit... I just go back to the language of Cohen. Completely separate from the merits. Effectively unreviewable on appeal. Conclusively determined. At the very least, it doesn't satisfy completely separate. Well, I just... And effectively unreviewable. I respectfully disagree because of the point that I said. Even though the substance is the same. It has no effect on the merits. And it's not reviewable. I mean, our property is seized. They've put placards up on the doors of the property. And it would be released depending... It can be reviewed when the... Depending on the outcome of the case. True. But you can never undo what's been done. And if this process is taken to its logical conclusion, the government's... If you affirm this, the government's going to go back... Except that I'm not. I'm simply addressing the facts of this case. I understand. But if this court affirms the government's going to go back, they'll eventually seize... We don't know that. We just know what we have. But they would have... On the basis of what we have, depending on how it's written, which is really all I'm asking about. I understand. But the position that the government took, which the district court affirmed, would allow, if permitted, the government to seize every piece of property that our clients... And that would depend on how an order would be written. Right. How this court... Well, it strikes me, as to subchapter D and D, if you go through the analysis of the three elements of a collateral order, both of them satisfy a conclusively determined and disputed question as to resolve an important issue completely separate from the merits of the action. D does, but B does not. And then as to the effect of reviewability, neither party can meet that criteria. So if you can't meet all three, why do we have jurisdiction? Well, because I do think we meet all three because it is collateral and separate for the reasons that we just argued about. And it's not reviewable. And it is an issue which is separate. In other words, all you can do at the end of a final appeal is say, okay, give the property back. But you can't undo the fact that it's been taken. Our client doesn't have access to it. Eventually, if all of their bank accounts are frozen, they may not be able to defend this case. They may not be able to take an appeal. And that could happen to anybody. But inconvenience doesn't necessarily rise to making this a very serious matter. No. But it could rise to an economic siege where a defendant, just because the government is claiming that they owe them a lot of money, the government, if you take this to its logical conclusion, could be permitted to seize everything they own and hold it through the trial. Certainly. I'm sorry. You say that, but that would be completely dependent on how tightly the opinion was written. It doesn't have to extend to an, you know, it's the house of, it's the sky is falling argument. Right. Could I, I'm about to, my time is about out. You're right. And I'm sorry. So could I touch briefly on the injunctive relief and then get to the merits? I'm sorry. All right. No, no, no. I'm happy to stay here as long as I, as. As long as we let you. As long as you let me. As long as we don't use up the time. All right. So with the court's indulgence, I'll, just stop me when I've gone too far. On the injunctive relief, clearly this is an injunction. The order said defendants shall not sell, dispose of, mortgage, or otherwise encumber, therefore said describe property until further order of the court. The banks were commanded not to disperse any money in the bank accounts. The writs have every attribute possible of an injunction. But we don't necessarily look to the terminology of the order, but rather to the substantial effect, don't we? That's exactly right. And so I would ask the court to step back and see the big picture here, that if the government's right, that the order of the court is not reviewable on appeal. And you take that with their collapsing of their other burdens of proof, that all they have to do is make a prima facie showing, which means that they just have to show that they, you know, get past a Rule 12B6 motion. And then with that, and for the reasons that my co-counsel will describe, they can essentially bootstrap that into ceasing all of my client's property. I'd like to address in the few minutes that the court would allow, I think, something that's the most important in this case, and that is, what is it that the government has to show? They, the petition affidavit, did not even allege an essential element of the claim, which is criminal intent. And this is very important. The government and the district court accepted that the standard, they said, they said that the standard was simply that they have a wrongful purpose. And that begs the question, and that's not adequate under the knowing and willful requirement. And I'd like to refer to a couple of cases that neither party cited, because they're not under the False Claims Act, but they discussed the word willful. One is the Ratzlaff v. United States at 510 U.S. 135, 1994 case. That's under the Anti-Structuring Act, which says you can't structure your deposits to avoid the reporting. And the judge said, we do not dishonor the principle that ignorance of the law generally is no defense to a criminal charge. In particular context, however, Congress may decree otherwise. The jury had to find that he knew the structuring in which he engaged was unlawful, and that's because it used the word willful. In Dixon v. United States in 2006, the court said the crimes for which Petitioner was convicted require that she have acted, quote, knowingly in one section and, quote, willfully in another section. As we have explained, the term knowingly merely requires proof of knowledge of the facts that constitute the offense. And the term willfully requires a defendant to have acted with knowledge that the conduct was unlawful. And Ratzlaff was cited by this court in Wilson v. United States, 133 Fed 3rd, 251 in 1997, where it says, because willful generally connotes a conscious performance of bad acts with an appreciation of their illegality, citing Ratzlaff, we can conclude that Congress intended to provide a different and lesser standard when it used the word knowingly. If we construe the word knowingly as requiring that the defendant must appreciate the illegality of his acts, we obliterate its distinction from the willfulness. And in this case, the act requires that it be knowing and willful. And the government's position and the district court essentially, by implication, accepted that entering into a commission agreement to market these laboratory studies is per se self-evidently illegal. And that is simply not the case. We cited in our brief, and I appreciate the extra time, the OIG advisory opinions, none of which has ever said that these arrangements are facially and per se illegal. They have always looked beyond the surface to determine the attributes. And 98-1, because compliance with a safe harbor is not mandatory, the fact that the arrangement does not fit within a safe harbor does not mean the arrangement is unlawful. 98-10, an independent contractor arrangement was outside a safe harbor, but they found that it was either legal because it lacked requisite intent, or no sanctions would be sought because the compensation was at fair market value. 99-3, the sales agreement with an independent contractor was only potentially violative of the AKS. 10-23, commission arrangement only potentially violated the AKC. So by failing to allege, even allege, that the defendants were conscious of their independent contractor arrangement being illegal, the affidavit and petition were facially defective. Congress took pains in this case to put a provision that said that knowledge of this section or specific intent to violate this section is not required. But they deliberately left in the word willfully, and they did not say that knowledge of illegality is not required. Thank you for your indulgence. Good morning. I'm going to please the court. My name is Tom Gresset from Charleston, South Carolina, where I practice with Walker, Gresset, Freeman, and Linton. I'm here today on behalf of four non-party corporate entities. These entities have been referred to as non-party property owners in the initial briefing, and then after the hearing and the court's order, they've been referred to as the Johnson entities, primarily because I believe the connection to Mr. Johnson and these entities is what the court relied upon to attach their property. It's our position that the original affidavit and application below were faulty and unreliable, and failed to demonstrate that Johnson had or was about to dispose of assets with the effect of hindering the United States, thereby entitling the government to the prejudgment writs it was awarded. After addressing the variety of issues that we raised with the application and the affidavit submitted, the district court entered its order noting in a footnote that the disputed factual issues were not necessary, and it relied solely on one type of transaction to determine that Mr. Johnson had dissipated his assets, with the effect of hindering the government. The court said these transactions demonstrate he hindered the government, and those are that he sold his personal residence in 2013. A year later with his new wife, he transferred ownership to joint ownership with her, and that in 2015 they sold and bought another home as the record reflects, that is because they needed a larger home for foster children. So in essence, the court said any real estate transaction, even your personal residence, is a change of an asset original in its structure in that home to another type of holding, and therefore it is a hindrance to the government. If the court simplifies it considerably, don't you also look at timing and consideration? I do not believe that the district court order did address timing and consideration. I'm talking about in considering it. Aren't those legitimate factors to consider? Yes, Your Honor. If someone sells property valued at millions of dollars or transfers it for $5, you can't be suggesting that that's not a factor worthy of consideration? Yes, Your Honor. If those were the facts. You are suggesting it is or you are not suggesting it is? I'm suggesting that the court should consider the facts of the transactions, and that is why we were so focused initially on the facts alleged in the initial pleadings before the court. The government said in 2013 the defendant should have known by virtue of a subpoena that they were in trouble, and they engaged in all of these transactions afterward. All I'm taking issue with is, as I was with your colleague, the extrapolations, and how you think this logically plays out, and it doesn't necessarily have the cataclysmic string of consequences that you attribute to it. The district court can look at things like the relationship of the parties, what might appear to be incestuous, what might look like imbalance in terms of valuation. Those are legitimate factors that the district court can consider. Yes, and as I'm almost out of time, may I answer your question, Your Honor? The court can consider those factors and, in fact, should consider such factors. In this case, there were no other factors found by the court in relation to the hindrance decision. It merely stated that on April 5, 2013, he sold his home for $390,000. A year later, in the new home, he added his wife as joint ownership. You're saying that the rationale is limited to that, that one can't look beyond that to the facts? That has to be your argument. Yes, Your Honor, this court can. Briefly, if I may, Your Honor, the second point that we wanted to address was the court's finding with regard to substantial interest that the court essentially disregarded the Nevada triple LP structure and assumed that the LLCs in Alabama were the property of the defendant. Johnson for purposes of substantial interest analysis, and we believe that was also an error. Thank you. Good morning, Your Honors. May it please the Court. My name is Christina Dent, as well as her two LLCs, Lakeland Pines LLC and Trinity Island LLC. Your Honor, for our client, we're in a different posture from our colleagues here. This has been a cataclysmic event for Mrs. Dent. She entered into this situation as a property owner. Through a hearing below, she left without any property. She now no longer owns the property that she lives in, that is her house, her sole house. Also, the life estate that she gave her parents has been voided. Your Honor, we are here asking you to reverse the district court's holding under Subchapter D. That is the only subchapter Mrs. Dent and her companies are under. The district court found that Subchapter B did not apply to Mrs. Dent because she is not a debtor. Under Subchapter D, we are asking for reversal on two bases. First, Subchapter D requires an action or proceeding. It requires that the Federal Rules of Civil Procedure be applied. In other words, in order for the government to void these transactions for a non-party, because Mrs. Dent and her companies are not parties, in order for them to void them, they have to bring an action, a summons and complaint and sue. For fraud, they would have to be subject to the Rule 9 pleadings of fraud. They would have a clear and convincing standard. The government attempted to avoid that by simply moving to attach Mrs. Dent's property and her company's properties. That is not proper under Subchapter D. That is a procedural mistake that the government made and it should not be allowed to stand, Your Honors. The other aspect that we are asking for reversal on, Your Honor, is that under Subchapter D, under 3306B2, there are factors that the court must consider. Under Subchapter D, you have to have actual intent. You cannot just have the effect of hindrance. You have to have actual intent. The record, Your Honor, is replete with the majority of it is in favor of Mrs. Dent. We have an affidavit from Mr. Cal Dent saying that it was always his intent that his wife own their homestead property. We have the affidavit from Mrs. Dent saying that she is the second wife of Mr. Dent. They have a child and he has children from a previous marriage. So as an estate planning technique, it was always their intent for her to own the property. We have the real estate attorney who handled all of the transactions saying it was on his advice that it was handled this way. Mrs. Dent was, Judge Floyd will tell you, Columbia is a bustling little town with the legislature and a university, and it is busy. To get out to the lake, out to Lexington, to do closings, at least a 45-minute trip, round trip. So for convenience of this family, in the regular course of developing their family, they had Mr. Dent handle some of the transactions. But ultimately, it was Mrs. Dent who signed the contract to build the house, and before the certificate of occupancy, she is the one who owned the property. And to divest her of the property now would, without due process, without having a lawsuit brought, without having gone through the actual intent factors, the 11 badges of fraud, nine of which, or nine and a half of which, militate in favor of Mrs. Dent and her properties, it is clear error and should be reversed, Your Honors. I see that I'm out of time. I'm happy to answer any questions the Court has. Thank you. May it please the Court, Henry Whitaker on behalf of the United States. The defendants in this case perpetrated a massive kickback scheme, and after defrauding the government of substantial money, proceeded to dissipate and conceal substantial assets. The government undertook its own independent investigation into that, without the benefit of any financial discovery, and presented substantial evidence before the district court that the defendants had, in fact, dissipated their assets, and Judge Gergel properly granted the writs of attachment. Before this Court, however, the threshold issue is one of appellate jurisdiction, as the questions have indicated. The orders here are neither collateral orders nor injunctions. As I think Judge Duncan's questions in the opening brought out, the issue of whether the appellate jurisdiction attachments were proper is indeed not separate from the merits, because it requires a preliminary showing of the probable validity of the debt, and nor is it effectively unreviewable, because these are just writs of attachment. These are liens, Your Honor. They just prevent the defendants from dissipating assets further, pending final judgment. If, in fact, the defendants were to encounter difficulty with, for example, paying attorneys fees, can't they petition the district court? Aren't there avenues to do that? There are ways, Your Honor, and more importantly, I mean, we indicated to the district court and to the defendants that if they needed to sell any of the properties in the meantime, we were willing to work with them, for example, to run their business or something, and I'm not aware that there's any specific evidence that they need that, but we were certainly willing to work with them to do that. Our interest in justice is in having an interest in the proceeds, Your Honor, and having them not dissipate assets. So we were certainly willing to work with them on that, and we indicated that on the record to the district court. One of the arguments with respect to the transfers is that the order only reflects that the appellate jurisdiction is not a property. The appellate jurisdiction is a property. The appellate jurisdiction is a property to whom the transfers were made and nothing else, so that there is concern about relying solely on the fact of the transfers as indicia of dissipation. Well, I don't think the district court solely relied on the fact of the transfers, Your Honor. What does the order say? Well, the district court, I think it's fair to say, relied on the entire course of conduct the defendants engaged in, in particular, the fact that there were a number of transfers that occurred in after the issuance of a subpoena to Blue Wave, and it's important to remember what Blue Wave was, Your Honor. I mean, Blue Wave was, in essence, a two-man operation consisting of the defendants and, for some people, the appellate jurisdiction, and the appellate jurisdiction was a two-man operation consisting of the defendants. And the appellate jurisdiction was, for some period of time, an office administrator. So it's not as if this is some, that's basically what Blue Wave was. It was operated out of a single-family home. So, and by the way, I mean, the subpoena issued in early 2013, the record also reflects, of course, as Judge Gergel recognized, that the government had been investigating this case from 2011 and talking to people. So, in all likelihood, it's very likely that the defendants knew that the government was investigating this case for quite some time. And let's keep in mind, I mean, these defendants made approximate, and this is not disputed, they reaped $116 million in the space of a little more than under four years in kickbacks, running out of a single-family home in Alabama. And so I think it's fair to say that the district court properly looked at the entire course of conduct. I mean, with regard to Mr. Johnson, I mean, Mr. Johnson was basically, has hidden his assets behind the liability shields of a number of Alabama corporations. And then, even more egregiously, in May 2013, after the subpoena is issued, he created a new Nevada limited liability, limited partnership, and transferred all of his properties, held by his Alabama LLCs, to that Nevada entity in an attempt to defeat the collection efforts of Alabama LLCs. So, in all likelihood, the district court did not adopt the United States. What is your best argument for the proposition that the dent entities are alter egos? We didn't rely on an alter ego theory with regard to the dent entities, Your Honor. No, that was why I was asking. Certainly. It's more of what is termed in this context a nominee theory, which, by the way, the district court did, in fact, not adopt. But we certainly argued it. And that would basically turn on whether, under South Carolina law, Mrs. Dent is the true beneficial owner of the property. And it seems to me that she is not, for two different reasons under South Carolina law. Number one, and we argued, we absolutely argued this in district court at Jay. Right. You argued the alter ego is just sort of an alternative. Not just alter ego, Your Honor. With regard to the dent entities, we argued a nominee theory. That's what I'm saying. Alter ego theory was alternative, a nominee theory. Well, the alter ego theory, I guess, is more relevant to the Johnson-related entities. Because the question there is whether he is the alter ego of his corporations. With regard to the dent transfers, it's more a question of whether Mrs. Dent or Mr. Dent is the true beneficial owner of the property. And that would turn on two different things under South Carolina law, which we pointed to the district court, too, and we argued at Jay 118, 119, and Jay 130, 131. The district court was wrong that we did not argue that. We absolutely did argue that in district court. And the first theory under South Carolina law would be just South Carolina law recognizes a fraudulent transfer doctrine. That's actually broader than the federal fraudulent transfer doctrine. So those transfers would be fraudulent under South Carolina law for the same reasons the district court found them fraudulent under federal law, number one. And number two, South Carolina also recognizes a constructive trust doctrine, which recognizes that a constructive trust is created when having another party hold title to the property would be inequitable. And for all the reasons the district court found that these transfers were fraudulent, having Mrs. Dent hold title to the property would clearly be inequitable to the interests of the United States. And if the court were to adopt that as an alternative ground of affirming the district court's judgment with regard to Mrs. Dent, that would obviate the need for the court to reach the federal fraudulent transfer theory, which I'm happy to discuss to the court. What is your best argument for distinguishing Buckeye other than the fact that it appears in that opinion that it was just a conclusory statement? Certainly, Your Honor. And I'd point to two main things. Number one, the issue on the merits on the appeal in that case turned on the interpretation of an indemnity agreement that was indeed completely separate from the merits of the underlying construction dispute. So that was actually a case where arguably the issue on appeal was separate from the merits. And, of course, we have the polar opposite here. That's point number one. Point number two, the Buckeye case was not a case that arose under the Federal Debt Collection Procedures Act. And unlike the situation in Buckeye, here the appellants were entitled to substantial protections in their property under that statute. That does not appear to have been the case in Buckeye. So I just want to make that clear. But I do think that that case is distinguishable from the situation you have here. And just to briefly touch on the injunction issue, not every mandatory order issued by the district court is an injunction. I mean, this Court has certainly recognized that principle in a number of cases, including in Ray Braxton, in which the issue was whether a mandatory order to the state to appeal was a mandatory appealable injunction. And this Court said it was not. And then there's also the Williamson case in the Sixth Circuit, which specifically dealt with an order that restricted the disposition of property. And I just want to note that, like, that, I mean, there's actually specific evidence in the statute that Congress didn't consider these kind of orders to be appealable orders, because in 1292A2, Congress specifically made receivership of the order to the district court. And that's what we're talking about here. Receivership orders, immediately appealable, separate from the provision about injunctions. Receivership, after all, is another potential remedy that is available under the Federal Debt Collection Procedures Act. And yet, Congress did not include, among the kinds of orders that are appealable under the Federal Debt Collection Procedures Act, did not include attachments or garnishments. And I think that evidence of congressional intent is particularly compelling and suggests that Congress would not have intended these kind of orders to be appealable injunctions. And it's unusual to have that kind of specific evidence of congressional intent in this context. If there are no further questions about jurisdiction, I'd like to maybe develop a few points on the merits. The Mr. Dawes, as far as I can tell, for the first time at oral argument, has contended that the scienter requirement under the statute requires knowledge of illegality. I mean, which is contrary to the position that the appellants took in their brief, where they recognized, I think, properly that what's required is some kind of wrongful conduct. Knowledge of illegality is not required. Excuse me, Your Honor. Let me just get this. And actually, there's a little bit more to this. Congress, in the kickback statute, actually added a specific provision, and this is in subsection H of the statute, saying that, quote, a person need not have actual knowledge of this section or specific intent to violate it. So it's, so the Ratzlaff rule is absolutely inapplicable to this statute, even though it says knowingly and willingly. And the Supreme Court reaffirmed that principle in the Bryan case from 1998, and the Eighth Circuit likewise did so in the Jane case from 1998. And I think that's clear that there is abundant evidence that these defendants engaged in wrongful conduct. This was a sales agreement that is blatantly unlawful under the relevant statute and guidance. In 1991, when the agency carved out various exceptions and safe places, they specifically noted, as particularly subject to abuse, commission sales agreements, where the commissions are directly proportional to the revenues received. And that's precisely because those kind of arrangements with independent contractors are particularly subject to abuse, as is shown by the fact that the defendants in this case were able to make $116 million out of a two-man operation in Alabama in a little under four years. This kind of arrangement is within the heartland of the abusive practices that Congress intended this statute to outlaw and combat. I'm happy to discuss any other questions the Court might have for me. I don't have any more affirmative presentation. The defendants have raised a number of arguments about, I just want to make sure the Court doesn't have any questions about the arguments about whether this is a debt under the statute, because those are very important to the United States. This is clearly a debt. The statute clearly authorizes us to protect our collection efforts through prejudgment remedies that are obtained before we get a final judgment. There doesn't need to be a final adjudication of wrongdoing. It's enough, as Congress said under the statute, that we show that the debt is a debt. It is probably valid, and that is exactly what we did. We showed that in spades. I did want to mention, actually, before I sit down, one point about the dent-related entities and their lawyer, and to the extent we can maintain the fiction that they all don't have the same interests in this case. The District Court did not actually void and deprive Mrs. Dent of titles to those properties. The District Court instead used its equitable powers under subchapter D to grant writs of attachment. Mrs. Dent still has title to those properties, Your Honors. It's just that there are writs of attachment in the name of the United States on those properties to protect our interests in the event that the defendants can't pay. And remember, the entire reason that we proceeded with this action is that we went to Blue Wave, and Blue Wave said, despite the fact that Blue Wave received $240 million from this scheme, they said, well, we have no ability to pay damages. And that was concerning to us because they reaped a substantial amount of money from this fraud. Is that the way the government sort of circumvented the requirements in the subchapter D, procedural requirements that she'll be filing? Well, that's an attachment. Attachment is a lien, Your Honor. Yes, that's right. We didn't circumvent the procedural requirements of subsection D, Your Honor, in the slightest. And if I could just develop that a little bit. I mean, their first, certainly subchapter, an action under subchapter D does not require the filing of a separate lawsuit. It talks about an action or a proceeding under subchapter D, and the FDCPA application is clearly a proceeding. And we've provided the Court with those citations in our brief. That's point number one. Point number two, there's also certainly no inconsistency with the relief granted in this case as to subchapter D and the requirements of the Federal rules of civil procedure. I mean, all those, all the appellants were served. They had a full and complete review of the fraudulent transfer thing. In fact, I mean, and, you know, they say that, well, there should have been discovery and a trial on the subchapter D issue. But it is the, but the appellants, it's the appellants who didn't want a trial. The appellants, in fact, not only declined. But she was just an interested party on the B, wasn't she? She is an interested party. Yeah, but wouldn't she have, wouldn't she be entitled to rights under subsection D that extends beyond that in terms of, for example, discovery? Correct? Well, we would be, it's we have been pressing for discovery, Your Honor. It doesn't matter whether you or not. The question is, would she have had greater rights under that if you had proceeded? You're taking, having, filing something that would satisfy a procedure. Would that, at the very, at the very least, violates the spirit of it, don't you think, in terms of what would be? Well, we granted her every right that they were entitled to under subchapter D is what I'm trying to say, Your Honor. I mean, if they wanted to. Did you commence the proceeding that seems to be anticipated? You have a different view, but it seems like your commencement is different, don't you? A separate action in the sense you're going after those properties, Miss Denton, and the island, and all those things. The statute does not require the filing of separate action, Your Honor. It does. It contemplates a procedure that allows, for example, discovery, doesn't it? Well, we. Does it or does it not? It may, Your Honor. It may, don't you know? Well, I think it does contemplate discovery, and we tried to. Well, let's just, I think it's helpful to, we wanted there to be discovery, Your Honor. I mean, it is them who resisted the possibility of discovery. I mean, and they still resist it to this day. We move to compel in June. Well, they may or may not have a right to do so. The point is what you're required to do, because the whole idea of attachment in its nature is sort of against the idea of people first having rights to come before courts and try those issues. We know there's a scheme set out by Congress to do so. But, you know, we have to be very careful in this, because you sort of undermine at least the basic rules of procedure. That is, it's not a question of what they want. It's what you're required to do. So you're saying you've done everything that's required? Absolutely. I mean, the district court had a hearing. They declined to call any witnesses and, indeed, opposed our calling witnesses to support our claims. They said, no, we don't want the government to oppose. They have not disputed, except for some minor factual errors that were in the initial application, which we regret and corrected, they haven't disputed any of the facts that we present in our brief about what they did. I mean, they haven't identified any discovery that they want from us that might change anything. I mean, of course, the evidence about their asset dissipation is in their possession. We want discovery from them. I mean, that's what we want, and that's what they have staunchly resisted. So, I mean, we absolutely complied with Subchapter D, Your Honor. There is nothing procedurally improper about what we did, and, in fact, we the United States does sometimes proceed under Subchapter D in the context of a FDCPA application. And, I mean, I just point the court, like, just to tie that bow off, I mean, the statute, and we provide these citations at page 68, repeatedly refer to an FDCPA action as, quote, an action or proceeding. Okay? So it can either be brought as a separate action or a proceeding. Here, it was brought as a separate proceeding. And then the Subchapter D says you can bring it in a, quote, action or proceeding. So I think that what we did perfectly lines up with... And in that proceeding, what was the status of Ms. Dent, her status? Well, she's a non-party, but the Federal... Oh, that's a big thing, isn't it? Actually, I don't think it's a big thing at all, Your Honor. It's not? In terms of... I thought that's... In personam jurisdiction, that's a big thing. And then when you bring in a proceeding, and I'm a non-party, you say that's the same thing? Just because I'm in the room, that's like saying, well, you were at the trial, you were sitting in the back of the room when we had the case, and therefore, before you had a hearing, you couldn't come up as a witness. You seem to brush off that in one... In Subsection B, she's an interested party, or she was there, a non-party. But you said, what did everything we're supposed to do? Well, there's no personal jurisdiction problem here, Your Honor, because she was served. So that's point number one. She was served for what proceeding? For the FDCPA proceeding. Absolutely. She was served. They accepted service. Number one. Number two, FRCP, Federal Rule of Cerebral Procedure 71, explicitly contemplates that the district court may indeed grant relief against non-parties. So that's not in any way inconsistent with the Federal rules. And, in fact, if Mrs. Dent was so concerned about the fact that she's a non-party, and I suspect she isn't, because I suspect her husband is adequately representing her in these proceedings... Counsel, I think you may be... Your argument seems a little more ad hominem now, because it's not for you to speculate. You don't know. Just argue the facts. Certainly, Your Honor. But to the extent she would be concerned that her husband is not adequately representing her, it would certainly be available to her to intervene in the proceedings, either permissively or as a matter of right, as non-parties often do in Federal court. So she certainly has the adequate ability to protect all of her interests that are at stake in this proceeding. And that's perfectly consistent with the way the Federal rules work, Your Honor. There's nothing anomalous about a non-party having an interest in a case in Federal court. I'm happy to answer any further questions, but we would ask that, number one, the appeals be dismissed for lack of jurisdiction, and if the Court finds there is jurisdiction, that the writs of attachment and garnishment be affirmed. Thank you, Mr. Whitaker. You each have very little time left. Come on up. I will speak quickly. Thank you. I want to address briefly the criminal intent. We have always taken the position, we'll always take the position that anti-kickback statute is a criminal statute, requires criminal intent. There is a grammatically maybe insignificant, but a meaningfully difference between wrongful, knowledge of wrongful, having wrongful purpose versus wrongful intent or knowledge of the wrongfulness of your act. The formulation that the District Court adopted would essentially write out the requirement by saying that if you knew that you were taking money in a marketing thing that was violated of the anti-kickback statute, then you had a wrongful purpose, by definition. What we're saying and what the Supreme Court has said and what this Court has said is that, no, if you use the word willfulness, you have to show that you are aware that what you were doing was wrong, was criminal. And Congress specifically said in this Act, it still has to be willful, but you don't have to have known about this specific section. And they could have easily have said you don't have to have been aware that your conduct was illegal. But they didn't say that. They said you don't have to have specific intent to violate this section. They did not eliminate the word willfulness. So in conclusion, our concern here is that at each turn the government has compressed its burden of proof to the point where all they have to do is say that we're alleging that you owe us a lot of money and then they have the power to take everything that our clients have. And Judge Duncan aptly says, well, they haven't taken everything and we can address that when we get there. No, I didn't say that. I was simply trying to get to your concern about the availability of funds, for instance, for specific concerns. I understand. And I would conclude by invoking Paul Harvey who once said, if the government can do this to anyone, it can do it to anyone. And that's why we would ask this Court to hear the appeal and decide this case and to restrict the government's ability to summarily take our clients' property.  May it please the Court. I briefly wanted to follow up on some conversation I had with the Court and then a brief statement by opposing counsel, which was that the District Court looked at all of the circumstances in making his decision. I don't think that that is accurately reflected in the order, particularly with regard to the issue of the dissipation of assets and the potential hindrance to the government. I think the specific facts the Court relied on are outlined there. I also think because the Court did not read an intent requirement into the dissipation phrase with the hindrance of the government, it is also clear that the other circumstances were not evaluated in conjunction with that decision. In other words, there was no intent required, so the Court didn't consider it. Thank you, Your Honors. Thank you, Your Honor. Just briefly, on behalf of Mrs. Dent, this is a final order as to Mrs. Dent. There is no doubt that she has lost these properties and her entities have lost these properties, so this is appealable as to her. This is her only remedy to get these properties back. The government makes issue of the fact that Mrs. Dent was in the room, however, and they wanted to do discovery on Mrs. Dent, however, Mrs. Dent doesn't have the same ability, Your Honors. She is not a party. She cannot send interrogatories. She cannot send requests to produce. If the government had followed the procedural safeguards She could if she intervened. I guess I'm a little curious about this. She was served. And there are, the statute does specifically contemplate the inclusion of non-parties. And if she wants the right, if she wants to participate as a party, that's certainly an avenue that's open to her. But, Your Honor, the burden is on the government to bring it to action. But the burden is on them, Your Honor. That is basically turning this statute on its head and saying... No, I'm simply saying that if you want to conduct discovery and I don't know that, I mean, I don't think the defendants here really want to go too deeply into discovery given the fact that they've been under a motion to compel for the better part of a year. I understand. But my only point is there are certain reciprocal features that go along with being a party. You're right. If you're not a party, you won't engage in discovery, but you can become a party. And until you do that, I think you're sort of in equipoise because unfortunately, or not, this is an odd statute. It is, Your Honor. I agree. Your Honor, may I continue? I noticed my time. Thank you, Your Honor. No, I agree with you. I wish I could give you the case that was on all fours. Part of the problem is that it is an odd statute. Right. I mean, generally this statute is used in terms of someone who has a giant tax judgment against them, who's sitting in jail and who's calling from the jailhouse and trying to dissipate their assets, something like that. Or the Tavine case where the government went to the lengths of suing not only the wrongdoer, but also the family who had the assets. So they brought the non-parties, the people into court. Here we have not been brought into court. While we said we would accept service, they sent out marshals with jackets that said Department of Justice and put writs on all of my client's properties, writs of attachment on all of her properties. And so she is in the position of, if she wanted to intervene in a lawsuit and be a party to an anti-kickback or false claims act case and get drug along and have a share of all the attorney's fees that's going on and the merits of the case, but that's not what she wants. I mean, if the government wants to come after her to avoid the transfers, they should have to sue her and then plead under Rule 9 and have the heightened clear and convincing evidence standard and then they would have discovery on those issues and she would be able to have all of those available remedies. And they have not done that, Your Honor. Thank you very much. And let me make sure. Yes, Your Honor. Ms. Whitaker said she was served. What exactly, what notice was she given when she was served? They wanted to serve her with the writs of attachment. In other words, we're doing this to you. Right. In other words. Right, Your Honor. They had gotten ex parte writs of attachment and then once those were revealed and we then moved to quash. For example, someone else you know has a tax deficiency and then someone takes your, the government says somebody else owes money and so we are taking your property. Now you have to come in and intervene to protect your property. Yes, Your Honor, exactly. Yes, Your Honor, exactly. Kind of strange, isn't it? It is. I think that's what Subjection D contemplates is that the non-parties Exactly. Yeah, exactly. This is something like, that's what the framers meant independent judiciaries for. Because the executive branch just can't come and do what it wants. Yes, Your Honor. The non-party didn't say, you could have come and, you know, insinuate yourself in this case against somebody else to protect your property that's in my hands. There's just something interesting about that. All right, that's it. Thank you so much, Your Honors.
judges: Roger L. Gregory, Allyson K. Duncan, Henry F. Floyd